## Albright *versus* County of Bedford.

## Rogers *versus* Same.

## Diehl *versus* Same.

1. Where the compensation of a public officer is fixed by statute, the officer cannot recover additional compensation for expenses incurred by him incident to the performance of his official duties.

2. It is immaterial that by usage long antedating the statute, such incidental expenses have been paid heretofore without objection. A custom, however venerable, must yield to positive statute law.

[Albright v. County of Bedford.]

3. The Act of May 7, 1864, fixed a per diem compensation for the commissioners of Bedford county while engaged in their official duties. In a feigned issue to determine the amount of compensation due, the commissioners offered to prove that for very many years it had been the custom for the commissioners to visit various portions of the county to hear tax appeals, attend bridge-lettings, and to make bridge inspections, &c., for the convenience of the public ; that for more than fifty years prior to the year 1880, the commissioners had claimed and received, without objection, the actual expenses for traveling fare, horse hire, and hotel accommodation necessarily incurred by them in making their rounds; but in that year the county auditors refused to allow such expenses.

*Held*, That the evidence was properly excluded, and that the commissioners were not entitled to be reimbursed for such expenses, or to receive any other compensation than the per diem pay authorized by said statute.

May 14, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Bedford county* : Of January Term, 1884, Nos. 282, 283, 284.

Feigned issues, to determine whether Jacob L. Albright, William Rogers and S. S. Diehl, county commissioners of Bedford county, have been overpaid, and have in their hands certain money belonging to said county, as found in the annual report of the county auditors for the year ending December 31, 1880, from which finding the said commissioners had appealed. The county of Bedford was plaintiff in each issue. The declarations averred that said Albright, Rogers and Diehl were duly elected county commissioners in November, 1878, for the term of three years from January 1,1879, and that for the year 1880 they received from the county treasury certain sums of money in excess of what they were entitled to for their compensation for that year, as shown by the report of the county auditors.

The pleas averred that the sums drawn in excess of the compensation named in the statute were for the expenses necessarily incurred for attending bridge lettings, appeals, &c., in various parts of the county, as per bill of particulars, &c.

The issues were the same in each case, except as to amounts in controversy, and it was agreed that the facts in the Albright case should be considered as applying to the other cases.

On the trial, before BAER, P. J., the defendant, Albright, made the following offer :

Defendant proposes to prove that this defendant, as county commissioner, traveled to divers bridge lettings, and to hold appeals in different parts of the county, and that his actual expenses in hire of horses, hotel bills and railroad fares, &c., amounted to the sum of $135.26, as set out in his plea.

Offer objected to, in so far as it proposes to prove any ex

penses, &c., to found any claim outside of the per diem allowed by law. That compensatory fees cannot be allowed in any case against the plain language of the statute.

THE COURT. It seems very plain to us the compensation fixed by law as pay for the commissioners of Bedford county is a miserable pittance, not at all commensurate to the labors and responsibility devolving upon them. But the court is of opinion that expenses incurred by the commissioners, as set forth in the bill attached to the defendant's plea and embraced in the offer, cannot be allowed in the absence of legislative authority, and as we know of no law authorizing payment of such expenses out of the county treasury, the objection is sustained, the offer rejected and bill sealed to defendant.

The defendant then offered to prove that he expended $137.26 in actual cash out of his own pocket in traveling over the county to hold tax appeals, in hotel bills, car fares, horse hire, and in attending bridge lettings and inspections whilst discharging his duty as county commissioner, to be followed by proof that the uniform custom has been for fifty years past, and, so far as known, since the organization of the county in 1771, that the county commissioners shall draw their actual expenses in holding appeals and in bridge lettings, and this custom is reasonable and for the public benefit, and that to require the commissioners to pay their own expenses when on such duty would be unreasonable and would absorb all their daily pay, and would be equivalent to requiring them to work for nothing and find themselves. That this custom is uniform and unbroken and acquiesced in for fifty years and upwards.

Objected to. Objection sustained. Exception.

Other similar offers to prove expenses paid by the commissioners for railroad fare, horse hire and keep, and board bills while attending bridge lettings and bridge inspections were excluded, and bills of exception sealed.

Verdict for the plaintiff in each case, and judgments thereon. The defendants took these writs of error, assigning for error the exclusion of their offers of testimony, as above.

*John H. Jordan* and *Wm. M. Hall*, for the plaintiffs in error. —An examination of the statute law of the province and state shows that the whole matter of assessment and taxation was a gradual growth, regulated to a great extent by the county judges and county commissioners independent of statute.

By the Great Law of 1682, Sec. CXXVIII, Duke of York Laws, 146, to defray charges incident to public business, the charge of each county shall be made in open court by the magistrates, and such courts shall have power to assess county taxes equal and according to proportion, one-half on the land

and the other half a poll-tax, upon all males from sixteen to sixty. There are no detailed provisions or directions; all that is left to the discretion and direction of the court.

The Act of 15th May, 1693, Duke of York Laws, 253, provides for granting to King William and Queen Mary one penny a pound of the clear yearly value of real and personal estate, and six shillings per head, to continue one year only, to be assessed by two members of the assembly, calling to their assistance three justices of the peace or other prominent citizens of the county, to meet at some place they might agree upon and assess the rate and appoint collectors, with power to increase or decrease assessments upon complaint made, according to the parties' own attest or the proof of others. There is no detailed provision as to notice of tax or place of appeal.

The same Act (1693), D. Y. L., 233, provides that whereas there is a continual necessity for a public stock to defray charges in each county for the support of the poor, building purposes, paying salaries of assemblymen, for wolf's heads, judges' expenses, &c., be it enacted that once a year the justices of the Court of Quarter Sessions shall make a rate of assessment which shall be raised in the same manner as the rate of one penny a pound, &c., agreed to be raised for the support of the crown. There is no provision for notice or place of appeal.

By Act of 1696, D. Y. L., 253, the tax for the support of the county is to be raised by the members of the assembly for the county and by four or more substantial freeholders; the clerk of the county to make out a list and fair duplicate for a compensation of twenty shillings, and the assessors to appoint the sheriff or other proper person collector. There is no provision for notice, but it is provided that a taxpayer, on finding himself aggrieved, may within a reasonable time before rate becomes payable complain to the assessor, who shall give him a hearing.

At the same legislature, 1696, D. Y. L., 256, 257, there is a provision for the assessment and collection of county tax by judges of the county court and six freeholders elected as assessors, who are to take to their assistance the grand jury, &c. This Act provides for a decrease or increase upon complaint made. There is no provision for notice nor for a time or place of appeal.

The Act of May 11, 1699, D. Y. L., 280, provides for an assessment by three justices and four substantial freeholders, and that on complaint of any taxpayer the assessors shall appoint a convenient time and place to hear his complaint and defalk or confirm the assessment.

The general Act relating to county rates and levies of

[Albright *v.* County of Bedford.]

April 11; 1799, 3 Smith's Laws, 392, § 7, provides for appeals. The assessor is to give personal notice to each taxable person of his tax, and of the time and place where an appeal will be held. This Act is the first that provides for a triennial assessment. The first triennial assessment was held in 1801. But this statute does not provide that the appeals for the triennial assessments shall be held in the townships. The same manner and form of appeal is provided for the other two years as for the triennial year.

The practice of going around the county to hold the appeals was not required by this statute, but was a usage which grew up for the accommodation of the people. There was not then, and is not now, any statute either requiring or contravening this custom. It grew up out of the public necessity for the public benefit, and is a reasonable, lawful and proper custom. And this custom or usage was accompanied with the other custom or usage, or rather, a part and parcel of this same custom or usage was that the county commissioners and their clerk were to be paid out of the county funds in addition to their daily pay their actual traveling expenses in holding the appeals. The commissioners might in 1799, and ever since, have held the triennial appeals in the commissioners' office in the county town, and put the taxpayers of the county to the great expense and loss of time of traveling there. By common consent and uniform usage, for the public benefit, this custom of holding the appeals in the townships has arisen and has continued, and by common consent and uniform usage the commissioners were paid their traveling expenses.

A custom, as defined by Bouvier, is a usage which by common consent and uniform practice has become the law of the place or subject matter to which it relates; and it may be general, so as to constitute part of the law of the whole country, or local, confined to a particular county or district. Customs of long standing in the commissioners' office make the law where there is no statute contravening, and when the custom is reasonable and for the public benefit: Commonwealth *v.* Commissioners of Philadelphia, 2 S. & R., 194. And a long-established practice or custom originating in a mistake of law is held good: Blythe *v.* Richards, 10 S. & R., 264. The county commissioners are coeval with the settlement of the county, are the public agents of the county with respect to its money concerns, and possess authority without express legislative grant commensurate with their public duty and trusts, and have a large discretionary power: Duncan, J., in Vankirk *v.* Clark & Graham, 16 S. & R., 289.

The county commissioners who, in 1801 or soon after, originated this custom and usage, and those who followed it ever

since, were violating no law, and were honestly exercising a lawful and proper judgment and discretion within the scope of their duties and powers. On the ground of a uniform usage and custom, founded on reason and the public good, and the exercise of a just and proper discretion of the several boards of county commissioners of Bedford county for the last eighty years, we affirm that the auditors have no right to intervene to set aside this custom. But, independent of the custom, as a new question on the construction of a statute, we ask this court to hold that the statute of 1834 (which is a re-enactment of a much older statute), which provides that the commissioners *shall* receive one dollar and a half a day does not exclude the payment by the county of these expenses, nor require the commissioners to pay them out of their own pockets.

*Bruce Petriken* (with him *Russell & Longenecker*), for the defendant in error, cited: Brown *v.* Commonwealth, 2 Rawle, 43; Godshalk *v.* Northampton Co., 21 P. F. S., 324; Commissioners *v.* Lycoming Co., 10 Wr., 496.

Chief Justice MERCUR delivered the opinion of the court, October 6, 1884.

These three cases were argued together. They present the same question. Each plaintiff in error was a commissioner of the county of Bedford.

The contention is whether the compensation of county commissioners is limited to the *per diem* fixed by the statute? They claim they have a right to demand payment for the additional expenses incurred by them in travelling around through the county for the purpose of holding appeals in the several townships and boroughs, and also in visiting and examining county bridges. The claim includes railroad fare, and the hire of conveyances, also hotel bills for themselves and horses when engaged in such business.

The Act of 15th April, 1834, provides that " the commissioners of each county shall respectively receive out of the county treasury, the sum of one dollar and fifty cents for each day they shall necessarily attend to the duties of their offices." The Act of 7th May, 1864, declares " That from and after the passage of this Act, the county commissioners of Bedford county shall receive out of the county treasury the sum of two dollars for each and every day necessarily employed by them or either of them, in attending to the duties of their offices. *Provided* that the said allowance of two dollars *per diem*, shall be paid only for any number of days in each year not exceeding seventy-five; and if a greater number of days shall be served,

[Albright *v.* County of Bedford.]

then the said commissioners shall receive for the additional days necessarily served in the discharge of their duties, the same per diem pay now allowed by law."

The language of these Acts is clear and positive. Their unmistakable purpose is to fix the entire compensation which the commissioners can draw from the county treasury. Not only shall they be paid by the day; but for the whole time they are necessarily employed in attending to the duties of their offices they shall be thus paid. There is no provision for any other or different pay. No allowance for mileage, traveling expenses or boarding bills is prescribed.

They derive their powers and authority, as well as their compensation, from the law. They can no more enlarge the one than the other.

It is conceded that no statute requires the commissioners to hold appeals in different parts of the county. It is a custom which appears to have been introduced in many counties of the state to suit the convenience of the people. No statute prohibits it. The Act of 15th of April, 1834, expressly declares they shall keep their office and all public records and papers belonging thereto, at the seat of justice of the respective county and in such building as may be erected or appropriated for such purpose. We are not aware that it has ever been claimed, when a commissioner resides away from the county seat, that he is entitled to demand compensation, or reimbursement, for expenses incurred in traveling to and from the seat of justice, nor his boarding bills or the keeping of his horses, while there. We do not see why such claim might not be made with equal propriety. In either case they are the personal expenses of the commissioner necessarily incurred in going to and remaining at a place in the discharge of his official duties. The statute makes no provision for the payment of such items out of the county treasury. Whether he goes to the county seat or whether he goes out of it, to discharge his official duties, the law prescribes a daily pay only. This is not to be in addition to his expenses. They are matters for which the law does not provide, and for which the county is not liable. When a positive law clearly prescribes the manner and nature of the compensation to be paid to a public officer, the directions of that law should be the only rule and measure of the officer's claim on the public moneys: Brown *v.* Commonwealth, 2 Rawle, 40. No presumption arises either from the duties of his office or from previous custom or usage, enlarging his compensation. Although different and other compensation may have long been recognized and sanctioned, yet when it comes in conflict with the later and positive law, it must yield to the latter. As was well said by

Mr. Justice WILLIAMS, in speaking of a public officer, in Godshalk *v.* Northampton county, 21 P. F. Smith, 324 " in no case should charges for services exceeding the compensation allowed by law, be sanctioned or tolerated."

We have considered the various Acts cited by the counsel, for the plaintiffs in error, from the " Great Law " of 1682, down to our own Act of 11th April, 1799, relating to the assessment and apportionment of taxes, and the hearing of appeals. We have given due weight to long established practice and custom. All these pressed by the able argument of the counsel have failed to convince us that the mandate of our Acts of Assembly, fixing the compensation of county commissioners, should either be set aside or disregarded. We discover no error in the rejection of evidence nor in the ruling of the court.

Judgment affirmed in each case.