Susquehanna County Auditors' Report.

48

Argued March 6, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*John H. Dando,* with him *E. R. W. Searle,* for appellants.

*Thos. A. Doherty,* with him *Elbert L. Davies,* for appellees.

OPINION BY KELLER, P. J., July 18, 1935:

Thirty-six citizens and taxpayers of Susquehanna County appealed to the court of common pleas of that county from the report of the county auditors for the fiscal year 1931, filed February 9, 1932. The appeal was taken from the refusal of the auditors to surcharge the county commissioners with certain payments ordered to be made by them and which had been excepted to, because, it was alleged, they were without legal warrant or authority. By agreement of counsel the appeal was heard by the court without a jury. The court filed its adjudication, surcharging the county commissioners in the sum of $2,026.70 for payments on warrants improperly and illegally ordered by them, but refusing to surcharge them for certain other payments which the appellant taxpayers contended were likewise without legal warrant or authority. Exceptions filed by the taxpayers to the adjudication were dismissed. Ten of the appellant taxpayers have appealed to this court.

Without taking up the assignments of error in detail we shall consider them under four heads, along the same lines as discussed by the court below.

(1) Susquehanna County is a county of the seventh class, with a population of over 20,000 and less than 50,000 inhabitants. By the Act of June 7, 1917, P. L. 570, Sec. 1, the salary of the county commissioners for such a county is fixed at one thousand dollars. Section 2 of the same act provides that such salary "shall be in full and in lieu of all other compensation for the services of county commissioners, except expenses necessarily incurred in the discharge of their official duties, or in the performance of any service, office or duty imposed upon county commissioners." The General County Law of 1929 (Act of May 2, 1929, P. L. 1278) provides in Section 301, that the salaries and compensation of county officers shall be as now or

hereafter fixed by law; and by Section 108, "The county commissioners shall be allowed their expenses, necessarily incurred and actually paid, in the discharge of their official duties, or in the performance of any service, office or duty imposed upon county commissioners." None of the three commissioners of Susquehanna County resided in the county seat, Montrose. The first question is, whether they were entitled to charge for their traveling expenses from their respective homes to the county seat, and return, and for their meals at Montrose, when they were attending the weekly meetings of the commissioners, every Monday. The court below held that they were. We think the rulings of the Supreme Court and this court are to the contrary. The case of Mansel et al. v. Nicely, 175 Pa. 367, 34 A. 793, is directly in point. The relevant statutes in force when that case was decided were the Acts of May 7, 1889, P. L. 109 and May 13, 1889, P. L. 200. The former fixed the compensation of county commissioners and provided, "That the pay allowed by this act shall be in lieu of all other compensation and charges for the individual services and expenses of said commissioners." The latter allowed the commissioners "their traveling expenses necessarily incurred in the discharge of their official duties." The Supreme Court held that expenses incurred by commissioners in going from their homes to the county seat were not "traveling expenses necessarily incurred in the discharge of their official duties," but rather came under the head of "individual expenses," the collection of which was forbidden by the Act of May 7, 1889. While the present statutes in force, (see supra), do not contain the clause providing that the "pay allowed by the act shall be in lieu of all other compensation and charges for the individual services and expenses of the commissioners," they definitely provide that their salary shall be in full and in lieu

of all other compensation, and specifically limit the expenses, for which they may be lawfully reimbursed to those "necessarily incurred in the discharge of their official duties, or in the performance of any service, office or duty imposed upon county commissioners." This just as definitely excludes "charges for the individual expenses of the commissioners"—except such as are necessarily incurred in the discharge of their official duties—as did the Act of May 7, 1889, P. L. 109. Now the Supreme Court held in the case of Mansel v. Nicely, supra, that expenses incurred by county commissioners in going from their homes to the county seat, and returning, were not "expenses necessarily incurred in the discharge of their official duties," nor "incurred in the performance of any official duty" (p. 377); and the ruling is just as applicable today as then. Following this, this court held in McKean County v. Young, 11 Pa. Superior Ct. 481, 489, that the "traveling expenses necessarily incurred in the discharge of their official duties" allowed by the Act of May 13, 1889, "applied only to traveling expenses incurred by a commissioner 'when his official duties called him from his home or his office to different parts of the county, or it may be of the state,' and did not include the expense incurred in going from his home to his office, and returning." By eliminating the word 'traveling' from the phrase 'traveling expenses' in the earlier acts, (See Com. v. Moore, 49 Pa. Superior Ct. 321) the commissioners are now entitled to be reimbursed for money actually spent on their *lodging and meals,* as well as for *transportation,* while traveling on official business from home or office "to different parts of the county, or state," but the later statutes justify no relaxation in the ruling that going from one's residence to the county seat, and returning, is not done in the discharge of official duties or in the performance of any service, office or duty imposed upon county com-

missioners. The same construction has been given the Act of 1917 by President Judge BAIRD of the 25th district in Coleman v. Clinton County, 5 D. & C. 535, and by President Judge SHULL of the 43d District in Reimel v. Monroe County, 6 D. & C. 693. The law contemplates that one who accepts public office whether it be a state or county office, which has one fixed place where his duties are to be performed, be it capital or county seat, shall take up his residence where his office requires his regular presence, and, if for his own convenience, the officer prefers to live elsewhere, his expenses going to, and returning from, his official place of business and his expenses while there, are no part of the expenses necessarily incurred in the discharge of his official duties, or in the performance of any service, office or duty imposed upon him, but are incurred for his own convenience and personal advantage. In Albright v. County of Bedford, 106 Pa. 582, 588, 162 A. 501, the Supreme Court, speaking through Chief Justice MERCUR, said: "The Act of 15th of April, 1834, expressly declares they [county commissioners] shall keep their office and all public records and papers belonging thereto, at the seat of justice of the respective county and in such building as may be erected or appropriated for such purpose. We are not aware that it has ever been claimed, when a commissioner resides away from the county seat, that he is entitled to demand compensation, or reimbursement, for expenses incurred in traveling to and from the seat of justice, nor his boarding bills or the keeping of his horses, while there." See also opinion of Attorney General Francis Shunk Brown, December 15, 1916 (Report and opinions of Attorney General, 1915-1917, p. 614). It is of no moment what the custom has been in Susquehanna County. Custom cannot override the statute: Albright v. County of Bedford, supra; Mansel v. Nicely, supra, p. 376; Brown v. Com., 2 Rawle 40. The commission-

ers should be surcharged with the moneys for which they claimed credit, and were reimbursed by the county, for their traveling expenses from their respective homes to the county seat, and return, and for their meals at Montrose, while in attendance on the meetings of the county commissioners.

(2) The commissioners charged, and were allowed by the court, ten cents per mile, circular, for the use of their automobiles on county business. This included their journeys from their homes to the county seat as well as trips on county business from the county seat to various points in the county. The former are, of course, wholly eliminated by the ruling just made; but we are of opinion that, as to the latter, the allowance cannot be justified in full. We do not adopt the strict pronouncement of some courts that no allowance can legally be made them for the use of their automobiles on county business. On the other hand they cannot pay themselves, or agree to pay themselves, even by formal resolution, more than the actual amounts laid out and expended. They can reap no profit from the use of their cars. As to depreciation, it is well known that this depends and is reckoned almost altogether, if not wholly, on the age of the car, and when a car is used for the commissioner's individual purposes as well as occasionally on county business, there is no reason why the county should be charged with depreciation, certainly not with more than is in fair proportion to such use. But moneys paid for gasoline and oil consumed on the county's business should be reimbursed to the commissioners, and there is no objection to adjusting this on a reasonable mileage basis. The credible testimony, eliminating all expenses in connection with trips from their homes to the county seat and return, does not justify an allowance of ten cents per mile. It warrants a finding between three and six cents per mile. A surcharge will be made for the difference.

(3)   The commissioners, apparently guided by the advice of their clerk, who had been in office for a long time, did not present itemized bills of their expenses on trips away from home on county business. They presented from time to time requisitions for lump sums, on account, for such expenses, which were ordered to be paid, and were paid by vouchers drawn pursuant thereto. This was improper. Itemized bills for such expenses should have been presented and approved. The custom to the contrary is not in accordance with law and cannot be approved. But it is admitted that no intentional fraud was perpetrated by the commissioners, in this respect, and in so far as they are able, from books or memoranda kept by them, to itemize the expenses for which they claimed credit and paid themselves by county warrant, they should be permitted in this proceeding to do so. Where such itemization cannot be supplied from their books or private memoranda, or from other credible sources, the payments cannot be sustained and must be surcharged.

(4)   The other items in dispute relate to the expenses of the county inspector of weights and measures, paid by orders of the commissioners. These may be subdivided into two classes: (a) allowance to the inspector of ten cents per mile, circular, for the use of her automobile on county business; (b) other expenses of the inspector, not itemized as required by law.

The Act of May 11, 1911, P. L. 275, as amended by the Act of July 24, 1913, P. L. 960—further amended by Acts of July 11, 1917, P. L. 789, July 19, 1917, P. L. 1102, April 21, 1921, P. L. 265 and May 14, 1929, P. L. 1757;—under which the inspector of weights and measures is appointed by the county commissioners, provides, inter alia, in section one, "In addition to the salary provided by law, the said county......inspectors shall be entitled to receive the actual expenses incurred by them personally in performing the duties of

their office; such as, transportation, hotel, livery, telephone, telegraph and postal charges, to be paid by the boards of county commissioners of their respective counties, on bills itemized and properly sworn to."

Here again there was a laxness in the conduct of the commissioners' office and in the performance of their duties which is justly subject to criticism; but this was largely due to the incompetence of, or non-performance of his duties by, the commissioners' clerk. There is no valid excuse for his failure to keep minutes of the action taken by the commissioners at their meetings on the various items of business which came before them, that they might be preserved as a permanent record of their doings. But where it is established that action was regularly taken as a board, even though no minute was made of it by the clerk, the commissioners should not suffer because of his failure properly to perform his duties: Jacoby v. Lehigh County, 36 Pa. Superior Ct. 194. It was testified, and the court below has so found, that the commissioners, as a board, agreed to pay the inspector of weights and measures, in addition to her salary,—which, by the way, was not fixed by the minutes,—mileage, at the rate of ten cents a mile, circular, for all trips made by her, in her automobile, on county business. An automobile, in which she carried an extensive equipment, including measures, weights, standards, seals, etc., was necessary in the conduct of her official business. The county supplied none, but agreed to pay her for the use of her own car on county business ten cents per mile. This is a somewhat different situation from where the commissioners paid themselves a like sum for the use of their own cars on county business. Here the commissioners were not dealing with themselves, but with a third person, and while it would have been better to have approved for payment bills which itemized in detail the inspector's actual expenses for transportation, since the amount

agreed upon is not so disproportionate as to be evidence of any fraudulent conduct, we are moved to stretch a point and regard the agreement as a compliance with the law. The law, as to certain public officers,[1] recognizes a like payment of mileage as reasonable, and there is no allegation or proof of fraud or wrongdoing. The inspector's bills, although not properly itemized, show the number of miles traveled each month on county business and the allowance to her on that

---

[1] There is no uniformity in the legislation on the subject; as may be seen from the following partial summary of allowances for mileage:

Arbitrators, 5 cents, March 22, 1877, P. L. 14.

Assessors, 3 cents, May 22, 1933, P. L. 853, Art. III, sec. 308.

Constables, supervisors or assessors, for advertising elections, 6 cents, May 23, 1923, P. L. 340; for commitment of children, 5 cents, April 21, 1855, P. L. 283.

County auditors, 6 cents, July 19, 1917, P. L. 1115.

County surveyors, 10 cents, April 13, 1859, P. L. 606.

Electors, 3 cents, May 24, 1893, P. L. 129.

Jurors, 3 cents, May 22, 1933, P. L. 851.

Jury commissioners, 4 cents, June 25, 1913, P. L. 567; (6th Class Counties) 6 cents, May 4, 1933, P. L. 276.

Judges—traveling to another district, 10 cents, Feb. 26, 1903, P. L. 7; in districts of more than one county, 15 cents, April 18, 1919, P. L. 60.

Legislature, members, 5 cents, May 10, 1927, P. L. 880; officers and employees, 10 cents, July 1, 1919, P. L. 717; July 12, 1919, P. L. 941.

Mercantile appraisers, 6 cents, Feb. 27, 1865, P. L. 4; May 2, 1899, P. L. 184, sec. 10.

Miners—Examining board and clerks, 5 cents, May 31, 1923, P. L. 481.

Sergeant-at-arms, 6 cents, April 2, 1856, P. L. 223.

Sheriffs, certain counties, 6 cents, June 20, 1911, P. L. 1072; June 1, 1915, P. L. 677; other counties, 10 cents, April 9, 1915, P. L. 54; May 2, 1919, P. L. 110; June 1, 1933, P. L. 1141.

Viewers, 3d & 4th class counties, 10 cents; 5th, 6th, 7th & 8th class counties, 5 cents, June 9, 1931, P. L. 401, sec. 171.

Witnesses, 3 cents, July 3, 1885, P. L. 256.

score was in accordance with the agreement with her and will, accordingly, be sustained.

The other items in the inspector's monthly bills are in a different situation. They were not itemized as required by law, but called for lump payments—for example, "meals, lodging, etc., 15.75"; "supplies, etc., 8.50"; without day or date, or other detail. She never gave the commissioners a properly itemized statement of her expenses. A bill including a lump charge for "meals, lodging, etc." is not itemized as required by the statute. The notes or memoranda from which they were made, she testified, have been destroyed. In so far as they cannot be supplied from outside credible sources, such as hotel bills, merchants' accounts, telegraph and telephone records, etc., they cannot be sustained. It is unfortunate that the commissioners should personally have to make good the payments thus improperly authorized, but we see no escape from it. Public officers should be held to a strict and rigid accountability, (Godshalk v. Northampton County, 71 Pa. 324, 329), and payments made by them from public funds, for bills and expenses which the law directs to be itemized, cannot be allowed unless they are itemized and authenticated in such way as to permit check and verification.

The assignments of error are sustained to the extent indicated in this opinion; and the record is remitted to the court below with directions to consider the evidence,—reopening the case if necessary—and make the necessary further findings and determinations in accordance with the views expressed in this opinion; and to enter such judgment as the law and the evidence, in the light of this opinion, require.