## Columbia County Auditors' Report

*R. S. Hemingway*, for appellants.

*J. Roland Follmer*, special counsel for the County of Columbia, appointed by the court.

EVANS, P. J., December 29, 1937.—This case comes before the court on the appeal of F. Marion Pealer, George Knecht, and Stanley W. Smith, Commissioners of Columbia County, from the report of the county auditors filed

on April 9, 1937, to no. 239, May term, 1937, in which report the county auditors surcharged the above-named commissioners as individuals in the sum of $1,137.61.

The pleadings in the case show that on April 9, 1937, Jesse E. Fritz, Paul M. Trembley, and Henry Kegel, County Auditors of Columbia County, filed their auditors' report in this court to the term and number above mentioned, and therein they specifically surcharged the county commissioners, F. Marion Pealer, George Knecht, and Stanley W. Smith, as individuals, with the following items of surcharge:

> Salary overpayment to J. Don Miller,
> commissioners' chief clerk........$1,000.00
> County treasurer's commission on said
> overpayment .................. 20.00
> Commonwealth costs collected by J.
> Don Miller as chief clerk and unaccounted for ................... 117.61
>
> Total amount of surcharge .......$1,137.61

### Discussion

The entire deficit found in the accounts of the county commissioners for the fiscal year 1936, with the exception of the treasurer's commissions amounting to $20, was occasioned by the defalcations of J. Don Miller as chief clerk. None of the commissioners, as appellants in this case, is charged with having personally defaulted or failed to account for the county's moneys. The chief clerk committed his defalcations in salary overpayment by marking the stubs of some of the commissioners' orders "void", or by filling in the stubs by names of other people to whom amounts were legally payable, and then drawing the orders attached to these stubs to himself for salary. He then presented these orders to the county treasurer, received checks therefor, cashed said checks, and appropriated the money to his own use. No bill or invoice for any of these payments was ever presented to the

commissioners for approval. The customary method of paying the county's bills was to present an invoice or bill for the account to the commissioners. If the account was a proper one for payment, the commissioners stamped the word "approved" on the back of the invoice, and at least two of the commissioners signed the approval. This invoice so approved was then pinned to the commissioners' order on the county treasurer. The approved invoice was kept on file in the commissioners' office, and the commissioners' order was handed to the party presenting the bill, who took it to the county treasurer's office and there received the check of the county treasurer drawn on the county's funds. The chief clerk knew that no commissioners' order was to be drawn for the payment of any sum whatever, unless there was attached to the order an invoice approved for payment by at least two of the commissioners.

The chief clerk also appropriated to his own use Commonwealth's costs paid to him in three cases aggregating $117.61. These items he had no right to receive, inasmuch as he had been instructed several times by the board of county commissioners not to accept such funds, but to direct their payment into the office of the county treasurer, the official authorized by law to receive such funds.

Sections 109 and 110 of The General County Law of May 2, 1929, P. L. 1278, provide as follows:

"Section 109. Chief Clerk.—The county commissioners shall appoint a chief clerk, who shall hold his office for a term of four years. In case of a vacancy, by death, resignation or removal for cause, his successor shall serve for the unexpired time for which he was appointed. The chief clerk shall enter into a bond for the faithful performance of his duties, in such sum as may be designated by the commissioners. He shall receive such salary as the salary board, or the county commissioners in counties where there is no salary board, shall determine.

"Section 110. Duties and Powers of Chief Clerk.—The chief clerk shall keep the books and accounts of the board of county commissioners, record and file their proceedings and papers, attest all orders and warrants issued by them, and perform all other duties pertaining to his office as chief clerk. He shall have general power to administer oaths and affirmations pertaining to the business of the commissioner's office."

The General County Law of 1929, sec. 54, as amended by the Act of May 23, 1933, P. L. 946, sec. 1, provides for the official bonds that shall be furnished by all county officers and of all deputies, clerks, and assistants, required by law to give bond to the county. The chief clerk gave such a bond in the sum of $2,000 with the New Amsterdam Casualty Company as surety and containing the conditions required by the act of assembly. This bond was recorded in the office of the recorder of deeds, and was filed in the office of the prothonotary as required by the act.

A chief clerk is a county officer required by the statute to be appointed by the commissioners. The statute also prescribes his duties and powers, and he must give bond for the faithful performance of his duties. When Miller misappropriated the funds of the county and did so by reason of his office as chief clerk, he is the one that should have been surcharged by the auditors, and not the commissioners themselves. The auditors having failed to surcharge Miller with the amounts he misappropriated, it becomes the duty of the court to do so, namely, for the $1,000 of salary overdrawn, and Commonwealth's costs misappropriated by him in the sum of $117.61, or a total of $1,117.61. The county treasurer should return to the county the $20 commissions charged on the illegal salary item, inasmuch as he is only entitled to commissions on legal disbursements.

The commissioners should not suffer because of the chief clerk's failure to properly perform his duties: Sus-

quehanna County Auditor's Report, 118 Pa. Superior Ct. 47, 55.

In Smith v. Golden et al., 15 D. & C. 317, 318, the court said:

" 'It is true also, as a general rule, that a public officer is not liable for the negligence of his official subordinate, unless he commanded the negligent act to be done, Schroyer v. Lynch, 8 Watts, 453; the rule is founded in considerations of public policy (Sawyer v. Corse, 17 Grat. 230), has been long recognized, and is one of general application. "The distinction generally turns upon the question whether the persons employed are his servants, employed voluntarily or privately, paid by him and responsible to him, or whether they are his official subordinates, nominated perhaps by him, but officers of the government; in other words whether the situation of the inferior is that of a public officer or a private servant." In the former case the official superior is not liable for the inferior's acts, in the latter he is: American Lead. Cases, 641. A subordinate officer, when he is an independent officer, must stand or fall by himself; and to him, unless otherwise provided by statute, the maxim *respondeat superior* does not apply: Wh. Neg., 289.' " See also Schroyer v. Lynch, 8 Watts 453, 458.

## *Order*

And now, December 29, 1937, the appeal of F. Marion Pealer, George Knecht (now Sarah V. Knecht, administratrix of the estate of George Knecht, deceased), and Stanley W. Smith, be and is hereby sustained, the surcharge is removed and stricken off in its entirety, and the judgments against the real estate of F. Marion Pealer, George Knecht (now George Knecht Estate), and Stanley W. Smith, arising by reason of the surcharge contained in the report of the auditors entered to no. 239, May term, 1937, be and are hereby stricken off as null and void; and the prothonotary is hereby ordered and directed to enter and record this order of court in this proceed-

ing, and also in the proceeding to no. 239, May term, 1937, and to enter upon the judgment indices where said judgments appear a notation that said judgments have been stricken from the record as null and void.

And it is also ordered and directed that as an individual, J. Don Miller, former chief clerk to the County Commissioners of Columbia County, be and is hereby surcharged with the sum of $1,117.61, the amount of his defalcations; that F. R. Clark, County Treasurer of Columbia County, be and is hereby directed to return to the county the $20 commissions charged on the illegal salary item paid to J. Don Miller, former chief clerk to the county commissioners.

And it is further ordered and directed that the County of Columbia pay the costs of this appeal.