# Northumberland County Controller's Report

594

*Russell S. Machmer*, for appellants.

*Frederick E. Lark* and *Carl Rice*, for County Commissioners.

*M. Luther Harter*, for County Controller.

PER CURIAM, June 26, 1950.—This matter comes before the court on an appeal by certain citizens and taxpayers from the report of the county controller. This report, to which exceptions have been filed, covers a period dating from January 7, 1946, to January 6, 1947. The apparent delay in the disposition of the case on the merits is due to a series of preliminary objections filed by the respondents, an appeal to the Supreme Court, the withdrawal of some of the parties appellant and the substitution of others in their stead. The exceptions, which are the basis of this appeal by stipulation of counsel, are four in number and will be discussed in the order of their presentation.

### Exception No. 1

The factual situation developed by the testimony in relation to this exception shows the County of Northumberland, a county of the fifth class, prior to and in the month of August, 1946, was the owner of certain coal lands purchased at a county treasurer's sale. This sale was occasioned by the failure of the former owners to pay the taxes assessed on the lands.

In the months of June and July, 1946, the commissioners, for the purpose of securing additional revenue for the financially distressed taxing districts in which

these coal lands were located, leased some of them to certain individuals, associations or corporations. These leases provided, inter alia, the lessees were to pay to the county for the use of said districts and the county a certain royalty per gross ton on the raw coal thus removed by the lessees.

The estimated income from royalty to be received on the land thus leased was between $6,000 and $8,000 per month. The actual income from August, 1946, to October, 1948, exceeded $300,000.

Four taxpayers of the county, on October 21, 1946, filed a bill in equity against the county commissioners and certain lessees, seeking an injunction to restrain the commissioners, inter alia, from carrying into effect these leases, and asked for their cancellation as well. The bill was duly served on the commissioners the same day. The commissioners immediately consulted their solicitor and, after due consideration, determined the action thus filed was of sufficient importance and the possible consequences of such a nature that, in their judgment, it was necessary to employ special counsel to assist the county solicitor in the defense of this action. They decided at this time, because of their extensive practice in municipal affairs, and especially in coal land cases, to employ as such special counsel Daniel W. Kearney, Esq., of this county, James J. Gallagher, Esq., of Schuylkill County, and John F. Smith, Esq., of Philadelphia County. At the same time, it was agreed by the commissioners that the sum of $1,000 each should be paid special counsel thus selected, either as a retaining fee or a payment on account of services to be rendered. These were the only terms on which counsel would undertake to assist in the defense of this case.

On the following day, the three special counsel thus employed, the entire board of commissioners and their solicitor, met at the office of Mr. Kearney for the pur-

pose of discussing the legal problems presented by the bill in equity. This conference lasted until early the following morning. The following day, special counsel met and began a research of the law applicable to the facts in the case. At least one other conference between all counsel and the commissioners took place during the week of October 21, 1946, and this for the purpose of determining a method of procedure in defense of the allegations in the bill. The precise time and effort consumed by counsel and the commissioners in the consideration of this matter is found in the record.

On October 28, 1946, the solicitor for the commissioners appeared before the court, asked for, and was granted permission to have two of the plaintiffs in the bill withdraw from the litigation. The special counsel, unaware of this action by these plaintiffs, continued with their study and preparation of the case.

On October 31, 1946, a resolution was adopted by the commissioners in which it was formally determined to employ the three attorneys above named as special counsel to assist the county solicitor in the preparation and trial of this particular case. It was determined further in the resolution that special counsel should be paid the sum of $100 per day for each of the days they were required to appear in court, and the sum of $50 per day each for the time required for the preparation of the case, and, in addition, a retaining fee of $1,000 each to be paid to them on account of services to be rendered in the case. On the same day, a written contract was executed by the county commissioners and special counsel. This contract contained the same financial arrangement as to the compensation of special counsel that appeared in the resolution, except the contract provided the sum of $1,000 should be paid to each special counsel as a retaining fee. This contract was approved by the county controller, and on

the same day a check for $1,000 was drawn in favor of, and subsequently paid to, each special counsel.

After receiving their respective checks, counsel continued their consultations and their preparation of the case for trial.

On November 4, 1946, counsel for the remaining plaintiffs asked for and received permission from the court to withdraw their names as parties litigant and discontinue the action.

The basis of this objection is: First, the employment of special counsel by the county commissioners, and secondly, the payment to them of the fee of $1,000 each. In support of their objection to the employment of special counsel, the appellants contend the defense of this action was a statutory duty imposed upon the county solicitor. The Act of May 2, 1929, P. L. 1278, defines the duties of a county solicitor, included among which is the defense of all actions or suits brought against the county. It follows that the commissioners cannot employ anyone else to take the place of the solicitor, nor to act as his assistant generally. The employment of special counsel is permitted only to assist the county solicitor, and even in that instance, only under conditions which are unusual, exceptional and where there is a real requirement for additional professional skill and knowledge: Manheim et al. v. Commissioners of Venango County et al., 330 Pa. 92 at 95; Commonwealth ex rel. Jones, 275 Pa. 298.

With this general statement of the law in mind, we direct our attention to an inquiry concerning the conditions under which special counsel were employed in this case. Were they unusual, and did they require additional professional skill and knowledge? The present action sought the cancellation of certain leases of county owned coal lands from which the royalty thus obtained was paid to the county commissioners, who, in turn, distributed it pro rata among the financially

distressed taxing districts in which the leased lands were located. The sum thus received for distribution actually amounted to an average of more than $10,000 per month. This action was considered a test case, the precise legal question involved had never been heretofore decided in Pennsylvania. It is immediately apparent that the result of this litigation might seriously affect not only county revenue but the revenue of financially distressed municipalities as well. The possibility of loss of revenue in this amount certainly presented conditions which were unusual and exceptional, and when the commissioners decided they should have the guidance and advice of special counsel of recognized ability, they were acting with reference to extraordinary circumstances.

The remaining portion of this objection is based on the legal proposition that the commissioners were without authority to pay special counsel a fee of $1,000 each. The appellants, neither in their exceptions as filed, nor at the time of the hearing, contended that the amount thus paid was exorbitant or unreasonable, but say: "The issue of the value of the services rendered is not in this case . . . the objection being to the payment to counsel as a retaining fee in advance." This brings us to the consideration of the question whether or not county commissioners may pay special counsel a retaining fee in advance. Counsel for the appellants very frankly says in his brief that he is unable to find a case holding that the commissioners may not pay such a fee where the employment of special counsel is authorized and justified.

A reference to the testimony shows that the fee received by special counsel has been referred to in various terms. Counsel themselves call it a "retaining fee". The resolution adopted by the commissioners referred to it as a "retaining fee on account of services to be rendered in this case". The written contract entered

into between the commissioners and special counsel refers to it as a "retainer fee". A retainer fee is defined in Bouvier's Law Dictionary as a "fee given to counsel on being consulted in order to insure his future services". It seems to us it makes little or no difference by what term the fee is designated. It is to be remembered that on October 21, 1946, the commissioners were confronted with an unusual situation, and their actions on this day in relation to the employment of special counsel were motivated by the desire to maintain and secure additional revenue. The agreement thus made with special counsel was a contract with them which assured the county of their services. Counsel, in good faith, and with the approval of the commissioners, began work on the study and preparation of the case the following day, and continued so to do until this action was discontinued. It is to be noted that no other charge was made in this case by special counsel. The fact that two of the plaintiffs withdrew was not a definite indication that subsequently the remaining plaintiffs would do likewise, and the case would be discontinued. The statement of Commissioner Thomas, which he contradicts, to the effect that if he had known that two of the plaintiffs had withdrawn from the litigation he would not have voted for the resolution on October 31, 1946, which granted to each of them the $1,000 fee in question, is meaningless. The county commissioners are clothed with corporate power of their respective counties and may contract therefor. The contract between the commissioners and special counsel was made October 21, 1946, and it would not serve the ends of justice, under circumstances of this kind, to strike down a contract which was thus begun in good faith.

The appellants contend also that it was unlawful for the commissioners to pay special counsel any fee, for the reason that the contract employing them did not precede the services rendered. The contract was

agreed upon October 21, 1946, and, while it is true the written contract was not executed until 10 days later, this should not, in our opinion, preclude counsel from being paid. The Supreme Court says in Bechtel v. Fry, 217 Pa. 591, 596, in discussing a contract between county commissioners and special counsel:

". . . the act of employment must be unequivocal and precise, not necessarily fixing the rate or amount of the compensation, nor evidenced by a written agreement or a record upon the minutes, but possessing all the elements of a contract binding not only the county to accept, but also the attorney to render the services in question. And, finally, that contract must precede the rendition of the services for which compensation is claimed."

This court, speaking through the Hon. H. W. Cummings, in Carpenter v. Northumberland County, 26 Dist. R. 46, in interpreting the legality of a contract in which the commissioners had employed special counsel without fixing a definite fee for his services at the time of his employment, and without recording their action on the minutes, and without a contract in writing, held, after counsel had completed his work, that the act of employment possessed all the elements of a contract binding upon the county, and, in addition, the contract preceded the rendition of services for which compensation was claimed. We are convinced the contract in question is a valid one.

While the unreasonableness of the amount of the fee paid to special counsel is not specifically raised, we believe that, since the commissioners act in a fiduciary capacity and are in fact trustees of county funds, a discussion thereof would be in order.

A reference to the testimony in the case shows the respondent called four members of this bar, each of whom was experienced in the practice of law as it relates to municipal affairs, included among whom

were the district attorney, who was a former county solicitor. Each testified the sum of $1,000 paid to special counsel was a reasonable amount for the services they performed. We were singularly impressed with the testimony of Mr. Pipa, who, at the time of the hearing, represented a financially distressed school district which would benefit by the additional income obtained by the county from these leased lands. He had been requested by his client, and had prepared a petition, to intervene as a party defendant. He had examined the law and given the case considerable study. His conclusion was the fee thus paid to special counsel was meagre.

Under all the circumstances, we conclude the commissioners, when they employed special counsel, acted in line of their duty, and when they entered into this contract they acted within the scope of their power; hence, the contract is a valid one. We find no merit to this exception.

### Exception No. 2

This is an objection to the payment of the sum of $900 during the year 1946 to the solicitor for the county controller, in addition to his salary as fixed by the Act of the General Assembly. Counsel stipulated that no testimony would be offered in relation to this exception, but it would be submitted to the court on the legal question involved.

The appointment of a solicitor to the controller is made in pursuance to the authority of the Act of May 2, 1929, P. L. 1278, sec. 135. This act provides that the solicitor shall receive such salary as may be fixed by law or by the salary board. Subsequently, the Act of May 23, 1933, P. L. 948, amended the salary provision of the above act to read: "He shall receive such salary as may be fixed by the salary board, but in counties of the fifth class such salary shall not exceed the sum of nine hundred ($900.00) dollars per an-

num." Northumberland County is a county of the fifth class. This Act of Assembly was interpreted by the Superior Court of Pennsylvania in Wiest v. Northumberland County, 115 Pa. Superior Ct. 577.

The commissioners seek to justify the payment of the additional sum to the solicitor for the controller by virtue of the Act of March 19, 1943, P. L. 18, sec. 1, which provides: "Cities, counties, and other political sub-divisions of this Commonwealth, are hereby authorized, during the emergency arising out of present war conditions and until the expiration of the fiscal year next following the cessation of hostilities, to pay to any officer (except officers elected by the people), employe or other person, whose salary or wage is paid out of such treasuries and is or may be fixed and limited by any act of the General Assembly, such compensation in addition to the amount fixed and limited by such act of the General Assembly as the council, or other body having the power to appropriate money of such city, county or other political sub-division of the Commonwealth, may fix and determine."

This act deals with wages and salaries of public employes. The solicitor for the controller is not an officer elected by the people. It is expressly stated in the act that during the emergency political subdivisions are allowed to increase wages and salaries. Cessation of hostilities refers to termination of open and hostile warfare. This occurred August 14, 1945. The fiscal year next following began January 7, 1946. The expiration of this fiscal year was January 6, 1947. We conclude that the commissioners had the right under this act to pay additional salary to the solicitor for the controller during the year 1946.

The remaining contention of the appellants is to the effect that there was no justification on the part of the commissioners to pay the sum of $900 as additional compensation to the solicitor; that in paying such

amount of additional compensation they abused their discretion. The act itself is silent as to any amount of additional compensation to be paid, and simply says the increase may be such compensation as the county may fix and determine. As was said in Kistler et al. v. Carbon County et al., 154 Pa. Superior Ct. 299 at 311: "With respect to many of their duties, county commissioners are clearly vested with wide discretion with which the courts will interfere only upon an indubitable showing that the discretion has been abused."

Without any testimony, we are asked to find the commissioners abused their discretion in the payment of this additional compensation to the solicitor for the controller. We are not permitted to act arbitrarily or capriciously, neither are we permitted to substitute our judgment for that of the commissioners; there must be some justifiable, factual basis for our action. There being none, we conclude this exception is without merit.

### Exception No. 3

This exception concerns objection to an item in the controller's report, stated as "Commissioners—Travelling Expenses". The amount shown to have been thus expended is $1,701.01. At the original hearing, it was testified generally that a portion of this sum was expended in the operation and maintenance of a county owned car, which was at the disposal of not only the commissioners but their employes as well, and was used solely for county business. It was further testified that a portion of the sum, without mentioning any specific amount, was expended in repair and maintenance of a privately owned Chevrolet truck when used for county purposes. The procedure was to have the garage send an itemized statement of these expenses, which was then examined and approved by the commissioners at a regular meeting, and ordered paid. The court felt, after reviewing the testimony, that the

expenditure of the amounts involved in this exception and the succeeding one was not sufficiently specific for an intelligent consideration. Recalling, too, that bills, as received, were itemized and that this itemization was available, we ordered, under date of May 2, 1949, a rehearing as to these exceptions for the purpose of affording the commissioners an opportunity to produce the itemized bills of the expenditures therein stated.

In the testimony developed at the second hearing, in support of this expenditure, there were produced itemized monthly statements from the garage (not shown in the exhibits on the record), indicating the charges which made up this item were (1) expenses for storage, maintenance and repair of a county owned car; (2) gasoline and oil placed into the county owned car when used by the county commissioners and their employes; (3) gasoline placed in cars owned by the commissioners personally; (4) insurance premiums covering insurance on the county owned car; (5) repairs and maintenance to Chevrolet truck privately owned but used on county business; (6) expenses of a commissioner in attending meetings; (7) expenses of two county employes in attending a meeting.

The first four items of this exception relate to expenses incurred by the commissioners in the operation of automobiles and will be discussed together. The Act of May 2, 1929, P. L. 1278, sec. 108, 16 PS §108, provides: "The county commissioners shall be allowed their expenses, necessarily incurred and actually paid, in the discharge of their official duties, or in the performance of any service, office, or duty imposed upon county commissioners."

The present board of commissioners assumed office the first Monday of January, 1944. It is well known that at this time the county owned automobile spoken of herein was in existence. The testimony shows

this car in the year 1946 was six years old, a 1940 model, had registered on its speedometer 150,000 miles, and was practically worn out, and that it was disposed of in 1947. We assume this car was purchased not by the present board, but by their predecessors in office. This eliminates from our discussion the contention of the appellants that the commissioners are without authority to purchase a car for the use of the county, and limits it to the use of a car already owned by the county when the present board assumed office. The purpose for which this car was used cannot be the subject of complaint. The record shows it was used to view county bridges, of which there were 250 in existence, to check the damages to property where a proposed new highway was to be constructed, inspection of polling places, and viewing of coal lands. This use of the car was made by the commissioners in the discharge of their official duties. The purposes for which the county employes used this car are likewise free from complaint. The commissioners, who are the nominal head of the institution district, of which the Child Welfare Bureau is an integral part, sent their investigators in this car on many missions related to their employment, among which were the transporting of dependent and neglected children to various hospitals at Philadelphia and Elizabethtown, or their engineer on county business. This use of the car, we conclude, was a duty imposed upon the county commissioners.

There were infrequent times when the county owned car was in use on other county business, and during these times the commissioners were compelled to use their own cars for county purposes. When this occasion arose, gas and oil were placed in the personally owned cars of the commissioners and charged to the county. No charge was made by the commissioners for the use of their personal cars, except for the gasoline. The testimony is undisputed that the personally owned

cars of the commissioners were used on county business whenever charges were made against the county for gasoline. This portion of the objection is without merit.

The expenditure involving the payment of insurance premiums on the county owned car was indicative of good business judgment on behalf of the commissioners and requires no discussion.

The appellants contend that even though these expenditures were necessarily incurred they cannot be allowed because they were not actually paid by the commissioners but are the result of a charge account, since such practice is not authorized by statute the expenditures thus made are illegal. There might be some merit to this contention if the commissioners themselves had received any money. The record shows that none of the commissioners were ever paid, but all checks were made payable to the garage. The manner of the payment of these bills to the garage is a matter of discretion vested in the commissioners. We find no abuse of discretion as the term is defined in Campbell et al. v. Bellevue Borough School District, 328 Pa. 197 at 202, where it is said: " 'Abuse of discretion does not, as a rule, come from unwise acts or mistaken judgment, but generally springs from improper influences, a disregard of duty, or a violation of law'." This portion of the objection is without merit.

A Chevrolet truck owned by a brother of one of the commissioners, who was also a county employe, was used during a part of the year 1946 to transport workmen and material to various parts of the county for the purpose of making repairs or alterations to county owned or maintained property. This truck was used primarily when county bridges needed repair, although frequently it was used for other county purposes. The owner made no rental charge for the truck, but the commissioners agreed with him "to repair this truck

when it was broken down by using it for county purposes", and when it was so used, to furnish gasoline and oil for its operation. This arrangement had been in effect for the last 10 years and was authorized by a resolution passed by the commissioners. The appellants contend the expenditures thus made are unlawful and the subject of a surcharge. The authority of the commissioners to hire a truck for the purpose of transporting workmen and material to maintain county property cannot be questioned. The vice of the present arrangement is the inability to determine when the truck was broken down by using it for county purposes, it not appearing in the record that it was thus used exclusively. The business judgment of the commissioners in approving this arrangement, to say the least, is subject to criticism, but while the expenditures thus made are not to be commended, we do not feel they can be condemned to the point of declaring them illegal. In addition, the indefiniteness of the testimony as to the exact amount thus expended prevents determination of the actual financial loss sustained by the county, if any. The Act of May 15, 1945, P. L. 538, 65 PS §191, provides: "No elected or appointed official of any political subdivision shall be surcharged for any act, error or omission in excess of the actual financial loss sustained by the political subdivision by reason thereof . . ." It is suggested that the commissioners make different arrangements for the hire of a truck for these purposes in the future. This should not be too difficult to accomplish, since precedent has been established in this county: Commonwealth ex rel. v. Kline, 13 Northumb. 284 at page 285.

The last two items of this exception relate to expenses incurred by one of the commissioners and two county employes in attending certain meetings. The first item, in the sum of $6.75, is in payment to one of the commissioners for expenses in attending a special

meeting of the board, which sat to hear appeals from triennial assessments. The sum thus paid was apparently for a meal for the board and a clerk. It is true the bill is not specifically itemized. The next item is in the sum of $6.50 and was paid to one of the commissioners to defray his expenses for a meeting which he attended at Harrisburg, Pa., 50 miles away. This meeting was with the Legislative Committee of the State Association of County Commissioners. While no official duty may have required his attendance at this meeting, his purpose in attending was to aid in drawing up legislation which would affect counties. Under the testimony, we are not prepared to say the attendance of the commissioners at this meeting was not in the performance of some service to the county. The last item, in the sum of $7, represents an amount paid to the chief clerk of the commissioners for expenses of himself and an investigator of the county institution district in travelling to Harrisburg to the Welfare Department "on business in connection with the county". It is true that the investigators for the county institution district are permitted an expense account, and, if this item had been charged in that manner, it would probably be unobjectionable. We conclude, as was said in Susquehanna County Auditor's Report, 118 Pa. Superior Ct. 47, 55: ". . . it would have been better to have approved for payment bills which itemized in detail the inspector's actual expenses for transportation, since the amount agreed upon is not so disproportionate as to be evidence of any fraudulent conduct, we are moved to stretch a point and regard the agreement as a compliance with the law."

It is our considered opinion that the commissioners have met the burden of proof required and have shown affirmatively that in respect to the items of this exception they have legally disbursed the funds of the county.

*Exception No. 4*

The objection filed in this exception refers to an item, "Travelling Expenses — Controller." The amount shown to be thus expended was $560.60. The county controller testified this amount was paid him for expenses incurred in travelling throughout the county in the discharge of his duties. The record indicates that some of the expenses were the result of trips to Harrisburg and Pittsburgh. He detailed the duties he performed.

The Act of May 2, 1929, P. L. 1278, as amended, 16 PS §138, provides:

"The county controller and his deputies, clerks and auditors shall be allowed their expenses necessarily incurred and actually paid in the discharge of their official duties, or in the performance of any service or duty imposed upon them."

It becomes immediately apparent that the county controller may be reimbursed for travelling expenses. The only question for our consideration is whether or not the payment by the commissioners of this item was legal. The determination of this question narrows itself to the form in which the controller presented his bill. The testimony at the original hearing states, generally, that this sum was expended by the controller for travelling expenses incurred in the performance of his duties. He used his own automobile and charged at the rate of 10 cents per mile. We gave the controller an opportunity to specifically itemize these bills in a second hearing. In this latter hearing, he showed the number of miles he travelled each month, but not where he went, nor what he investigated. Neither does he show the days on which the investigations were made. Some of this mileage included a trip to Pittsburgh.

The procedure for payment of these expenses was to have the controller submit to the commissioners a

requisition for his travelling expenses each month in a lump sum, and, in this fashion, they were ordered paid by the commissioners.

In Susquehanna County Auditors' Report, 118 Pa. Superior Ct. 47, 54, it is said, in a somewhat similar situation: "Itemized bills for such expenses should have been presented and approved. The custom to the contrary is not in accordance with law and cannot be approved."

In Kistler et al. v. Carbon County et al., 154 Pa. Superior Ct. 299, 310, it was held: " 'Payments made by them [county commissioners] from public funds, for bills and expenses which the law directs to be itemized, cannot be allowed unless they are itemized and authenticated in such way as to permit check and verification'."

We do not believe the bill of the controller for his expenses was itemized in such manner as to permit verification. We do not find the controller, when he presented his bills for expenses, nor the commissioners, when they ordered the same paid, were attempting to perpetrate a fraud upon the taxpayers, nor that they were dishonest. Honesty is concerned with the moral rather than the legalistic import of an act: Scranton School District Audit (No. 1), 354 Pa., 225, 230. It is to be noted that the vouchers were drawn by the commissioners to the order of the controller personally. This court, in Commonwealth ex rel. v. Kline, 13 Northumb. 284, 286, says: "It is the duty of the controller to scrutinize all bills . . . against the county, to make such inquiry as he deems necessary in order to determine whether the services were rendered."

The controller here acted in dual capacity. He approved bills presented in a lump sum for payment of expenses to himself without the proper itemization. Under these circumstances, we believe it was not only advisable, but absolutely necessary to effect legal pay-

ment, that these bills should have been itemized with particularity. We conclude the payment of these items in the form presented was illegal and is subject to a surcharge. Hence, the following

*Order*

And now, to wit, June 26, 1950, the first, second and third exceptions are dismissed. The fourth exception is sustained. It is ordered that the county commissioners be, and they are, herewith surcharged for moneys paid to the county controller, Robert Gibson, listed as "Travelling Expenses" in the sum of $560.60.

Appropriate exceptions are noted for the appellants, the county commissioners and the county controller.