## Sinking Fund Commissioners of Philadelphia v. Philadelphia et al., Appellants.

Argued December 7, 1935.   Before FRAZER, C. J., KEPHART, MAXEY, DREW, LINN and BARNES, JJ.

*Joseph P. Gaffney,* for Edwin R. Cox et al., appellants.

*S. Davis Wilson,* propria persona.

*Henry S. Drinker, Jr.,* for Sinking Fund Commissioners, appellee.

*James Hall Prothero,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for Philadelphia and J. Hampton Moore, appellees.

OPINION BY MR. JUSTICE LINN, January 6, 1936:

These appeals are from a peremptory writ of mandamus for the payment of $7,667,015.04 to the commis-

sioners of the sinking funds which the law requires the City of Philadelphia to maintain. The commission is composed of two officers for the time being—the mayor and the city controller—and a third commissioner elected by city council. The petition for the writ was filed in the names of all the commissioners. The city controller, as a defendant, opposed the contentions of his fellow commissioners; he is one of the appellants. The other defendants included the City of Philadelphia, now an appellee, the members of city council and the city treasurer, who are appellants.

The petition averred that for the year 1935 city council had failed to order any payment (except for interest) to the sinking fund commissioners for the amortization of the funded debts of the city as required by law, and that the sum of $7,771,780 would be sufficient for the payment by the city to the existing sinking funds to provide for the payment of the principal thereof at the dates of the several maturities of the several outstanding loans. The case was determined on demurrers to defendants' returns to the alternative writ.

The position of city council seems to be that the sinking fund commissioners must be content to accept what, if anything, city council chooses to order paid to the sinking funds. The city controller contends that he is authorized to fix the amount of the annual sinking fund payments, and that the sum requested by petitioners was not necessary.

We all agree with the conclusion reached by the learned President Judge of the court below that there is not the slightest basis in law for the claims made on behalf of the city council or of the city controller.

The sinking funds involved in this case furnish security for forty-four loans made at various times from 1906 to 1929.

In Brooke v. Phila., 162 Pa. 123, 29 A. 387 (1894) will be found a brief history of the legislation relating to Philadelphia sinking funds from 1807 to the time of that

decision. We then said (page 130): "So far, then, as relates to the general public . . . what is called the sinking fund is the mere conduit, through and by which the money raised by annual taxation reaches its destination; it goes into the fund for a specific purpose, to which it is inviolably pledged; when there, the commissioners must see to it that it accomplishes its purpose, the payment of the funded debt of the city . . ." Sinking funds are required by the fundamental law. The Constitution provides: "Every city shall create a sinking fund, which shall be inviolably pledged for the payment of its funded debt": Article XV, section 3. "Any county, township, school district or other municipality incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof. . . .": Article IX, section 10. This section is affected by the amendment to section 8, article IX, which now contains the following: "In incurring indebtedness for any purpose the city of Philadelphia may issue its obligations maturing not later than fifty (50) years from the date thereof, with provision for a sinking-fund sufficient to retire said obligations at maturity, the payment to such sinking-fund to be in equal or graded annual or other periodical installments. Where any indebtedness shall be or shall have been incurred by said city of Philadelphia for the purpose of the construction or improvements of public works or utilities of any character, from which income or revenue is to be derived by said city, or for the reclamation of land to be used in the construction of wharves or docks owned or to be owned by said city, such obligations may be in an amount sufficient to provide for, and may include the amount of, the interest and sinking-fund charges accruing and which may accrue thereon throughout the period of construction, and until the expiration of one year after the completion of the work for which said indebtedness shall have been incurred; and said city shall not be required

to levy a tax to pay said interest and sinking-fund charges as required by section ten, article nine of the Constitution of Pennsylvania, until the expiration of said period of one year after the completion of said work." While these provisions are self-executing, various statutes were passed to aid in making them effective. The so-called Charter Act (June 25, 1919, P. L. 581) provides, in article XVIII, section 2, P. L. 610, "In any ordinance authorizing the city to incur new debt or increase its indebtedness, except for temporary loans, the council shall provide for the collection of a tax to pay the interest thereon and the principal thereof as is now or may hereafter be required by the Constitution. . . ." Section 8 provides: "Whenever any debt shall be or shall have been created for which the Constitution of this Commonwealth requires a sinking-fund to be established, the proceeds of the taxes levied for the payment of the principal and interest of such debt and all other money pledged or appropriated for the payment of the principal and interest of such debt shall be paid into the sinking-fund of such city, and shall be inviolably reserved for, and applied exclusively to, the payment of the principal and interest of such debt.

"Whenever there shall be money in the sinking-fund in respect of a particular debt in excess of the requirements for the payment, during the twelve months next ensuing, of principal maturing and interest due, such excess money shall be applied to the purchase and cancellation of such debt, but, if at any time it shall be impracticable or financially disadvantageous to purchase such debt, such excess money may be invested temporarily in bonds or other evidences of debt of the United States of America, of this Commonwealth, or of any county, city, borough, township, school district or other municipality or incorporated district of this Commonwealth."

We were informed at the argument that the ordinances providing for the loans involved in the record

contained provisions complying with the legal require-ments stated above.[1]

This case does not require consideration of the extent of the modification of article IX, section 10, of the Constitution quoted above, by the amendment of section 8 of the same article. For present purposes it is sufficient to say that when city council provided merely for the payment of interest owing on the city bonds in 1935, it failed to do what was required by the law and by its contracts with the bondholders; it failed in not making the sinking fund payments required to amortize principal as it had agreed to do. As respondents only have appealed, it is also unnecessary, on this record, to determine the maximum amount required by the contracts to be appropriated, because it appears, as the learned court below held, that (of the sum demanded by the commissioners) the respondents failed to justify withholding the amount ordered to be paid, an amount slightly less than what was demanded.

The learned counsel who appeared on behalf of the city council contended that the members of the sinking fund commission became commissioners in virtue of a city ordinance and were therefore subordinate to city council, subject to its direction, and without right to the remedy invoked. Though an ordinance of the city enacted in 1857 provided for the appointment of sinking fund commissioners, they now exist pursuant to statute:

---

[1] Section 4 of the Ordinance of July 13, 1920, said to be typical, is as follows (page 222): "Whenever any loan shall be created by virtue of this ordinance, there is, by force of this ordinance, an annual tax levied of seven (7) per centum on the par value of such certificates so issued, to pay the interest, also the principal of such loan, within thirty years; and there is hereby annually appropriated to the Commissioners of the Sinking Fund, out of the taxes so collected, a sum sufficient to pay the interest of said loan, also the principal thereof, within thirty years and as the same becomes payable, the appropriation for the interest to be paid semi-annually, and for the sinking fund quarterly, to the said Commissioners."

Act of June 1, 1885, P. L. 37, 49; Act of June 25, 1919, supra, article XIV, section 1, P. L. 601.

The commissioners are trustees, with the care and custody of the securities and money allotted or appropriated to the various sinking funds. The ordinance of 1857[2] contained the following provisions:

"SECTION 2. That all the real estate and personal property now belonging to the several Sinking Funds be and they are hereby vested in the said Commissioners, subject to the requirements of the several Ordinances by which the said Sinking Funds were severally created.

"SECTION 3. That the City Treasurer, for the time being, be and he is hereby appointed the custodean of all the deeds, titles, certificates of stock, evidences of property and money belonging to the several Sinking Funds subject to the directions of the said Commissioners, and under their instructions shall from time to time make investments of the moneys received for the several Sinking Funds in such stocks as are now or may hereafter be provided for by law.

"SECTION 4. The duties of the said Commissioners shall be as follows:

"First. To meet at the office of the City Treasurer on the first Monday of every month, and receive from the said City Treasurer a report of the amounts in his hands due to the said Sinking Fund, whether the same be from the receipt of taxes, or corporate income, or income from the investments of the said fund.

"Second. To cause the City Treasurer to invest all such amounts so received by them without delay in the purchase of the funded debt of this corporation, and the investments so made shall be in the joint official names of the said Commissioners, describing them as such.

"Third. To report their proceedings and the state of the fund in their charge to the Councils, quarterly, and whenever required to do so by the said Councils.

---

[2] This ordinance was given legislative effect by the Acts of 1919 and 1885 cited in the text.

"Fourth. To keep minutes of their proceedings and the transactions of their business, and cause the same to be recorded in a book to be kept for that purpose": Ordinances of Phila., 1857, at page 188.

Like all such trustees, they have duties to the city's bondholding creditors, as well as to the city as debtor: Brooke v. Phila., supra; Corporation for Relief of Widows, etc., v. Phila., 317 Pa. 76, 176 A. 727. Any one of them may institute proceedings for the protection of the trust; it may become the duty of one commissioner to take steps to restrain or obtain redress for unlawful acts of the majority. A bondholder may likewise sue: Com. ex rel. v. Pittsburgh, 34 Pa. 496; Com. ex rel. v. Pittsburgh, 88 Pa. 66; Corporation for Relief of Widows, etc., v. Phila., supra. See also Ohlinger v. Maidencreek Twp., 312 Pa. 289, 293 et seq., 167 A. 882.

The contention made on behalf of city council that the court will not interfere with discretionary acts of municipal authorities in the absence of fraud or abuse of power is inapplicable. The contract of the city and the bondholders, considered in the light of the Constitution and enabling legislation, provides in effect that, for each loan, a sinking fund shall be created and maintained to provide for interest and principal at maturity. Whether the law is complied with and the contract performed are matters of law, though performance may depend on the determination of matter of fact, for example, whether the payment to a sinking fund is sufficient in amount. City council, the commissioners, jointly or separately, and bondholders as a class, may differ as to the amount necessary, but unless a satisfactory compromise is reached the fact will be determined by the courts in appropriate proceedings. Each interested party has a right to be heard, but not to exclude another. Reference is made in the briefs to sinking fund earnings expected from year to year, the commission contending for a calculation on a basis of $3\frac{3}{4}$ per cent while city council and the controller put it in excess of 4 per cent.

The determination of the proper percentage may be only one of the facts to be found by the court if necessary in ascertaining the amount of the required payment.

The appellant city controller takes a position different from that taken on behalf of city council. He contends that the provision in article XVII, section 1, of the Charter Act of 1919, supra, requiring the city controller to furnish to the mayor "estimates of receipts and liabilities" to enable the mayor to supply data to city council for the preparation of the annual budget, authorizes the controller to decide what is a liability and what is not a liability, and that his judgment on the subject is final; that in the exercise of such authority, he decided that no annual contributions to capital amortization was required. The contention cannot be considered seriously. No statute confers or could confer power on the city controller to violate the contract created pursuant to the constitutional mandate. The city controller is "the city's head bookkeeper" whose duties (see article XII, Charter Act, 1919, P. L. 597) "are partly ministerial and partly discretionary, and while the courts will not review his discretion exercised in a proper case, yet he is not above the law, and his discretion is not arbitrary but legal": Com. ex rel. v. Phila., 176 Pa. 588, 592, 35 A. 195. As stated above, he is not authorized to fix the payment. See also Thayer v. McCaslin, 314 Pa. 553, 171 A. 898, and cases there cited; Com. v. Walton, 236 Pa. 220, 84 A. 766; Com. v. Tice, 272 Pa. 447, 116 A. 316; Corporation for Relief, etc., v. Phila., supra. His contention based on section 2 of article XVII must likewise be rejected.

Both city council and the city controller suggest that the learned court below erred in holding that for each loan the law required a separate sinking fund. They contend that the city need maintain but one sinking fund and, if there is more than one loan, the sinking funds created to secure payment of each loan must necessarily be considered as part of a single general sink-

ing-fund reserve maintained as common security for all loans without regard to the date of issue. To support this contention the learned counsel who appeared for city council refers to the Consolidation Act of February 2, 1854, P. L. 21, as establishing a single sinking-fund. Pursuant to the act the various municipalities of the County of Philadelphia were consolidated into a single city. The act provided that the net debts of the several municipalities incorporated into the city, after deducting and cancelling assets held for their payment in their respective sinking-funds, should be consolidated into one debt to be called the debt of the city of Philadelphia, and provided (section 38) that a sinking fund should be established for the payment of that consolidated debt. When the consolidation was completed the force of that section was spent. Subsequent legislation shows clearly that for each bonded debt thereafter created a sinking fund must be maintained. While the total of the city's bonded debts may be referred to as the debt of the city or the total of the assets in the sinking funds as the sinking fund reserve, such terms do not control the legal interpretation. The record shows that in practice in Philadelphia the accounts of the loans have been kept separate as also have been the sinking funds for separate loans. The record in Schuldice v. Pittsburgh, 251 Pa. 28, 36 et seq., 95 A. 938, shows the same practice in the City of Pittsburgh. It would be highly inequitable that a sinking fund that had been accumulating for, say, nine-tenths the term of a loan, should be shared, in the event of municipal default, by the holders of recently-created loans with sinking fund accumulations of a short period. It would require very clear legislative expression to establish appellants' contention and we do not have it. This matter perhaps received emphasis in the arguments only because of the loans to raise the city's contribution to the construction of the Delaware River Bridge and the subsequent sale of the city's interest in the bridge. Money contributed by the city to the cost

of the bridge was raised by five different loans from 1920 to 1924. In 1931 the city sold its interest in the bridge and received from the purchaser the amount it had then invested in the bridge. City council directed the sum received to be paid to the sinking fund commissioners. They received and apportioned it to the sinking funds established as security for the loans from which the money for the bridge was obtained. One contention now made on behalf of all the appellants is that instead of appropriating the sum to the five loans in question it should be considered as appropriated to the forty-four city loans, in which event (so they contend) no contribution for principal amortization for 1935 would be required on the ground that in those circumstances there would be sufficient sinking fund reserve, treating all the funds as a unit. That question was raised in Corporation for the Relief of Widows, etc., v. City of Philadelphia et al., 317 Pa. 76, 176 A. 727 (1935) and the contention now repeated by appellants was rejected. As we took original jurisdiction in that case the record remains in our files. The bill recited the receipt of the amount stated above, by the commissioners of the sinking funds, and, in the 20th paragraph, complainant averred that the commissioners had appropriated the entire sum: "$4,940,700 of such money to be set aside for the retirement of the bonds then held in the sinking funds whose proceeds were used for the Delaware River Bridge and the balance of such money to be set aside as a special sinking fund for the payment of the remaining outstanding bonds whose proceeds had been used to pay for the Delaware River Bridge." A detailed account of this allotment was attached to the bill as an exhibit. The answer of the city council admitted the averment but denied its legal validity. Subsequently, November 15, 1934, city council passed an ordinance designed to repeal the ordinance appropriating the money to the sinking fund commissioners, and intended to withdraw it from them. The bill prayed for an injunction to restrain the city from

doing so and this court decided that the plaintiffs were entitled to the relief sought. The decision necessarily approved the practice of maintaining a separate sinking fund for each loan and in distributing the total received to the five sinking funds securing the loans which contributed to the bridge. Section 8, article XVIII, of the Charter Act, supra, requires a separate sinking fund for each loan; unless maintained the law cannot be complied with.[3]

The assignments of error are dismissed. As the time prescribed in the order for the payments to be made has passed, it is necessary to modify the order to read as follows: Now, January 6, 1936, it is ordered that the Mayor of the City of Philadelphia, J. Hampton Moore, or his successor in office; the City Council of said City and each and every of its members, to wit, Edwin R. Cox, Charles J. Pommer, Bernard Samuel, Harry J. Trainer, Phineas T. Green, George Connell, Maurice E. Levick, James G. Clark, Edward A. Kelly, Simon Walter, Frederic D. Garman, Clarence E. Blackburn, Frank L. Kenworthy, Richard S. Harris, Samuel Emlen, Morris Apt, Windom Bryant, John J. McKinley, Jr., Clarence K. Crossan and John J. Daly, or the successors in office of any of them respectively, forthwith pay or cause to be paid to the Commissioners of the Sinking Fund of the City of Philadelphia, the sum of $7,667,015.04 to provide the amount sufficient and necessary to meet the principal of the several loans of the City of Philadelphia

---

[3] An act approved May 9, 1935, P. L. 155, entitled "An Act Granting Power to counties, cities, boroughs, towns, townships, school districts and poor districts to redeem unmatured bonds and obligations by a new issue of bonds at a lesser rate of interest," contains the following: "Provided, however, That all moneys in the sinking fund, properly applicable to any such issue of bonds or obligations to be so redeemed, shall first be applied to the payment, so far as applicable, of the principal of such bonds or obligations, and the balance of such issue only shall be redeemed by the issue of new bonds."

as they respectively mature; and that WillB Hadley, City Treasurer, or his successor in office, and S. Davis Wilson, City Controller, or his successor in office, draw and approve the required warrant or warrants and do and perform all necessary and proper acts pertaining to their offices in order that the aforesaid sums be paid to and deposited with the Commissioners of the Sinking Fund to provide the sum necessary and sufficient to meet the principal of the several loans of the City of Philadelphia as the same shall respectively mature.

The order appealed from is affirmed as modified, costs to be paid by appellants.