Kistler et al., Appellants, *v.* Carbon County et al.

Argued November 8, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

F. S. Riordan, for appellants.

Ben Branch, with him Albert G. Prutzman, County Solicitor, for appellees.

OPINION BY RENO, J., January 27, 1944:

The auditors of the County of Carbon, a county of the sixth class, presented a bill for their services which the county commissioners refused to pay. The auditors secured a writ of alternative mandamus directed to the county and the commissioners; the commissioners moved to quash; the motion was overruled. Then the commissioners filed a "return and answer"; the auditors demurred; and the court overruled the demurrer and quashed the writ. The auditors appealed.

I. The auditors' bill for $1,730.64 covers the services of the three auditors rendered from July 28, 1942, to November 14, 1942, at the rate of $6 per day and mileage. Payment was refused for the reason, inter alia, that the appropriation for auditors' compensation for 1942 had been exhausted when the bill was presented. The commissioners had appropriated $3,000 for auditors' compensation, and that sum having been expended for that purpose, they declined to make further payments.

The General County Law of May 2, 1929, P. L. 1278, as supplemented by the Act of July 18, 1935, P. L 1184, §3, and as amended by the Act of July 1, 1941, P. L. 236, §1, 16 PS §370, requires the commissioners in counties where there are no controllers to adopt an annual budget and "necessary appropriation measures required to put it into effect." Provision is made for "supplemental appropriations for any lawful purpose from any funds on hand or estimated to be received within the fiscal year and not otherwise appropriated," and for the transfer of unencumbered balances within the same fund or from one spending agency to another. It also provides: "No work shall be hired to be done, no materials purchased, no contracts made, and no order issued for the payment of any moneys by the county commissioners which will cause the sums appropriated to be exceeded."

A budget, under the Act, is more than a mere esti-

mate of probable revenues and expenditures. It is a method whereby expenditures are controlled and limited during the fiscal period by designating the amounts of money legally at the disposal of the commissioners, and the purposes for which they may be expended. Construing similar legislation applicable to cities of the first class, it was held that such a provision is not merely directory, but that it is in the highest degree mandatory. In *Leary v. Philadelphia*, 314 Pa. 458, 472, 172 A. 459, a mandamus to reinstate a discharged policeman, the Supreme Court adopted the opinion of Judge THAYER, in *Gamble v. Philadelphia*, 14 Phila. 223, wherein he said: "The words are words of positive prohibition and constitute a perfect and unanswerable defense to the claim of every contractor which is not brought within the specified conditions ...... In order to make the city liable, not only must there be an appropriation, but a sufficient appropriation. Its responsibility cannot be made to extend beyond the amount actually appropriated." For an expenditure in excess of the appropriation the commissioners may be surcharged even though the county actually receives reasonable value for the outlay: *Lower Nazareth Township Supervisors' Appeal*, 341 Pa. 171, 19 A. 2d 92.

County commissioners, however, cannot, by adopting a budget, limit or avoid liabilities imposed upon the county by the Constitution or by statutes. The call of the Constitution or of a statute is paramount, and they must respond to it by providing sufficient appropriations. In *Bladen v. Philadelphia*, 60 Pa. 464, the Supreme Court held that a clerk of the board of health whose salary had been fixed at $2,000 could recover only $1,400, the amount appropriated by city councils for that purpose. The opinion indicated that the clerk's compensation had been fixed by the board, under a statute which authorized it to determine the salary, but recovery was denied because the appropriation in force

when he accepted his appointment was not sufficient to pay the salary. SHARSWOOD, J., limiting the operation of the decision, commented (p. 467): "Of course, we are not to be understood as holding that the city councils have any power to withhold payment from a state officer whose salary or perquisites are fixed by law, such as the officers of the courts, jurors, or indeed any of the necessary expenses of the administration of justice. The municipality has no more control over such matters in this city, than commissioners have in the several counties of the Commonwealth. They can no more be reduced or denied than can the amounts ascertained in the fee bill when the city has occasion either to claim or defend in the courts, or transact other business in the offices. These claims stand on an entirely different ground." It follows that the commissioners cannot defeat the auditors' claim upon the ground that the appropriation is insufficient. County auditors are constitutional officers: Constitution, Art. XIV, §1. Their compensation is fixed by statute. This is a statutory obligation, and courts, in adjudicating questions arising under such obligations, cannot be halted by a plea of an insufficient appropriation. "Where it is the mandatory duty of a board or an officer to make an appropriation for, or to provide in the budget for, the salary of a public officer or employee, and there is no other adequate legal remedy whereby such duty may be enforced, mandamus will lie." 35 Am. Jur. "Mandamus" §246. The county commissioners are obliged to appropriate sufficient funds to meet constitutional and statutory obligations, and they can be compelled to do so by mandamus: *Sinking Fund Commissioners v. Philadelphia*, 320 Pa. 394, 182 A. 645; *Com. ex rel. v. Pommer*, 330 Pa. 421, 199 A. 485.

Whether, when a constitutional officer is confronted by an appropriation insufficient to pay his statutory compensation, he should first apply for a mandamus to

compel an increased appropriation and follow with another mandamus to compel payment of his compensation, is a question which, in view of our disposition of this case, we need not now decide. Possibly, in such a case, he might secure relief by joining both prayers in one petition. It seems unnecessary to require him to institute two proceedings; but we express no opinion upon that question.

II. The second ground of the commissioners' defense is that the auditors' compensation is not regulated by the act upon which they base their claim. The auditors claim under a general statute; the commissioners stand upon a local act which has not been specifically repealed; and thus is presented the question of implied repeals of local acts by general statutes.

The Act of March 9, 1865, P. L. 292, provided "that the ...... county auditors of Carbon County shall ...... receive ...... the sum of three dollars for each day they shall each actually and necessarily attend to the duties of their offices: Provided ...... the pay, as aforesaid, allowed to each auditor, shall not exceed eight days; and for all time, ...... spent by said auditors, over eight days they shall receive, therefor, the compensation now allowed by law, and no greater." The compensation "now allowed by law" was, under the Act of April 15, 1834, P. L. 547, §60, $1.50 per day, "for each days necessary attendance upon the duties of their offices."

The Act of May 12, 1887, P. L. 95, §1, 16 PS §2561, provided that "the auditors of each county shall be allowed" three dollars a day and mileage. It contained no repealing clause, and in *Morrison v. Fayette County*, 127 Pa. 110, 17 A. 755, it was held that it did not repeal a local act which fixed the compensation of the auditors of Fayette County at the same rate but made no allowance for mileage.

The Act of May 8, 1929, P. L. 1634, §1, 16 PS §2421, provides: "Hereafter the compensation of the auditors

...... in counties of the sixth class shall be six dollars per diem, for each and every day necessarily employed in the discharge of their duties, together with six cents per mile circular, from and to their homes, once each and every week so employed." It specifically repeals the Act of 1887, so far as that act applies to counties of the sixth class. It contains no further repealing clause, and upon this factor is based the commissioners' contention that the Act of 1929, like the Act of 1887, under the authority of *Morrison v. Fayette Co., supra,* did not repeal local acts, and especially not the Act of 1865, applicable to Carbon County. The auditors base their claim upon the Act of 1929.

Although the opinion does not distinctly avow it, the *Morrison* case was grounded upon the principle, stated in the syllabus: "A general statute without negative words, does not repeal a previous statute which is particular, even though the provisions of one be different from the other." From this general principle was drawn the corollary: "It is against reason to suppose that the legislature in framing a general system for the State, intended to repeal a special act which the local circumstances of one county had made necessary": *Brown v. County Commissioners,* 21 Pa. 37, 43. The *Morrison* case has been cited with approval in comparatively recent times for the general principle which supports it.[1] The corollary, however, has been vastly modified, if not completely discarded.

After the *Morrison* case, the impact of the municipal classification statutes upon local acts began to receive increasingly more attention by the courts. Starting with *Com. ex rel. v. Macferron,* 152 Pa. 244, 25 A. 556, the Supreme Court, adhering to the general rule that

---

[1] *Rutherford Water Co. v. Harrisburg,* 297 Pa. 33, 146 A. 113; *Southwestern National Bank v. Riegner,* 292 Pa. 74, 140 A. 615. These cases relate to the repeal of general statutes by subsequent general statutes.

"a previous local statute is not repealed by a subsequent general statute inconsistent with it unless words of repeal are employed," excepted from its operation statutes which legislated for classified municipalities, and held (p. 250) : "Whenever, therefore, any law regulating the municipal affairs of cities of a given class shall be found to conflict with a previous local statute applicable to any member of the class relating to the same subject, the latter must give way by reason of the nature and purposes of class legislation. In this manner existing diversities will gradually disappear, and uniformity throughout the class will be finally secured." The same doctrine was announced in *Quinn v. Cumberland Co.*, 162 Pa. 55, 29 A. 289; *Com. ex rel. v. Wunch*, 167 Pa. 186, 31 A. 551; and other cases. In *Com. ex rel. v. Brown*, 210 Pa. 29, 59 A. 479, Chief Justice MITCHELL discussed the whole subject, reviewed the foregoing and other cases, modified some expressions in the *Macferron* case, and laid down these rules (p. 39) : "First, the rule that a general statute does not repeal by implication a local act with different or inconsistent provisions, is still the prevailing rule. Secondly, but the rule being founded on a presumption of legislative intent, will not apply when a contrary intent is clearly apparent. Thirdly, where the clear general intent of the legislature is to establish a uniform and mandatory system as in the municipal classification acts, the presumption must be that the local acts are intended to be repealed. Fourthly, where an act is passed to carry into effect a mandatory general provision of the constitution, the presumption must be that it was intended to repeal even local acts inconsistent with its terms." Thus, *Morrison v. Fayette Co.*, supra, and *Brown v. County Commissioners*, supra, have been modified, and there is now a rebuttable presumption that when the legislature enacts a general statute which covers the entire subject matter of previous laws

or one relating to the affairs of classified municipal subdivisions it intends thereby to repeal prior conflicting statutes or local acts: *Bosack v. Schuylkill Co.*, 311 Pa. 157, 165 A. 393; *Com. v. Curry*, 285 Pa. 289, 132 A. 370; *Jefferson Co. v. Rose Twp.*, 283 Pa. 126, 129 A. 78; *Murdoch v. Biery*, 269 Pa. 577, 112 A. 772; *Hammond v. Aluminum Co.*, 261 Pa. 370, 104 A. 660; *Com. ex rel. v. Moore*, 255 Pa. 402, 100 A. 260; *Long v. Phillips*, 241 Pa. 246, 88 A. 437. The principle has been imbedded in the Statutory Construction Act of May 28, 1937, P. L. 1019, §91, 46 PS §591, where it is stated in these terms: "Whenever a general law purports to establish a uniform and mandatory system covering a class of subjects, such law shall be construed to repeal pre-existing local or special laws on the same class of subjects."[2]

The amendment of November 6, 1923, to the Constitution (Art. III, §34) expressly authorizes the legislature to classify political sub-divisions, and provides that "all laws passed relating to each class, ......shall be deemed general legislation within the meaning of this Constitution." The Act of May 8, 1929, supra, although it applies to only one of the several class of counties, is a general law. It is mandatory; it provides that the compensation *"shall be* six dollars per diem". (Italics supplied.) There is nothing in the text of the act, or other factors which are to be considered in the construction of legislation (see Statutory Construction, supra, §51, 46 PS §551) showing an intention to save local acts upon the same subject from repeal, and, there-

---

[2] The Statutory Construction Act, enacted in 1937, does not control the construction of legislation passed before its effective date. But many of the rules contained in the Statutory Construction Act are statutory expressions of the canons of judicial interpretation: *Marson v. Philadelphia*, 342 Pa. 369, 21 A. 2d 228; *Lower Nazareth Township Supervisors' Appeal*, 341 Pa. 171, 19 A. 2d 92.

fore, following the presumption, we are bound to hold that it repealed the local act of March 9, 1865, supra.

III. The third contention of the commissioners, set up in their return, is that the auditors "have not performed their work with diligence, ...... they have procrastinated and have delayed the completion of their work, so that the same was not completed until on or about December 1, 1942, when ...... their work and duties ...... should have been performed and completed prior to June 30, 1942. Because of the excessive, unreasonable and unnecessary amount of time ...... they intend and seek to obtain from the funds of Carbon County excessive, unreasonable, oppressive and unlawful compensation, and the defendant commissioners, who have charge of ordering the disbursement of county funds and who, in their discretion, are to pass upon the justness, reasonableness and lawfulness of money claims against the County, have determined and adjudged that the claims of the county auditors now sought to be enforced in this proceeding are excessive, unreasonable, unnecessary, oppressive and unlawful."

To this the auditors reply, in effect, that they (1) are vested with discretion to determine the number of days necessary for the performance of their duties, and (2) that the duty of the commissioners to pay is purely ministerial.

We do not experience the slightest difficulty in dealing with their first proposition. It is clearly untenable. Uncontrolled and unreviewable discretion is, under our system of government, rarely committed to public officers, and discretion to transfer the public funds to the private purses of public officers has never been recognized. "The turpitude of acting both as a judge and party in the same cause, cannot but be obvious to the dullest comprehension:" *Boyer v. Potts*, 14 S. & R. 157, 158, per GIBSON, J. The Act of 1929, supra, expressly limits auditors to "six dollars per diem, for each

and every day *necessarily* employed in the discharge of their duties." (Italics supplied.) Undoubtedly, there is a presumption in favor of the correctness and regularity of their official acts, but their claims for the time alleged to have been devoted to official duties are subject to review: *Mansel v. Nicely,* 175 Pa. 367, 34 A. 793. Since the auditors cannot be allowed to be the final judges in their own case, some other authority must determine whether the time for which they charge was necessary for the performance of their work.

This duty devolves upon the commissioners. Upon them rests an obligation to guard the county against unlawful or exorbitant charges. In counties where there is a controller, he is required to "scrutinize, audit and decide on all bills, claims and demands whatsoever against the county": The General County Law of May 2, 1929, P. L. 1278, §349, 16 PS §349. In counties which have no controller, this duty must necessarily be performed by the commissioners. The authority of county commissioners has not been comprehensively defined by legislation, but the cases clearly mark the path of their official responsibilities. "The commissioners of a county ...... are the public agents of the county, with respect to all the money concerns; and must necessarily possess an authority, without any express grant from the legislature, commensurate with their public trusts and duties": *Vankirk v. Clark,* 16 S. & R. 286, 289. "County commissioners are the agents, trustees and managers of the county and its financial affairs. They act in a fiduciary capacity, and the money of the county is expended on orders drawn by them on the county treasurer": *Com. v. Krickbaum,* 199 Pa. 351, 355, 49 A. 68. It is their duty to hold all officers of the county upon whose claims they pass "to a strict and rigid accountability, and in no case should charges for services exceeding the compensation allowed by law be sanctioned or tolerated": *Godshalk v. Northampton Co.,*

71 Pa. 324, 329. For a failure to perform these duties they will be personally surcharged, as in *Susquehanna County Auditors' Report* 118 Pa. Superior Ct. 47, 180 A. 148, where county commissioners were surcharged because they paid lumped expense bills of an inspector of weights and measures instead of demanding itemized statements required by the applicable act. There, this Court said that "payments made by them [county commissioners] from public funds, for bills and expenses which the law directs to be itemized, cannot be allowed unless they are itemized and authenticated in such way as to permit check and verification."

The point under consideration is also exemplified by *Fey's Appeal*, 68 Pa. Superior Ct. 40. There, borough auditors charged $70 each for auditing the borough's accounts. In a tax-payers appeal, the borough council answered that "the charge was reasonable and but fair compensation for the work done and time expended." This court held (p. 44): "The Act of June 9, 1911, P. L. 865, clearly outlines the duties of such auditors,—the report shall contain an itemized list of all receipts, expenditures and credits. These items are simply noted in the transcript as for 'service' without mention as to character of work done or time employed. When we consider that Tamaqua is a borough having less than 5,000 (census of 1910) population; that the account is not lengthy or complicated; that the compensation for auditors as fixed by the statute, ...... was 'two dollars per diem for each day necessarily employed in the duties of his office' the item of seventy dollars ($70) for each auditor is manifestly out of proportion to the reasonable services demanded, and the auditors failing to specify the time they were engaged, these items are prima facie exorbitant and should be marked for surcharge to the town council." This case distinctly teaches that public officers charged with the expenditure of public funds are obliged to satisfy them-

selves, at the risk of a personal surcharge, that the services for which they pay have been actually rendered and that not more time is paid for than is reasonably necessary for the performance of the work.

The performance of this duty calls for investigation, deliberation and the exercise of judgment, and for this the commissioners are clothed with ample discretion. In that regard, they possess the powers and authority exercised by the county controller in *Com. ex rel. v. Woodward,* 84 Pa. Superior Ct. 124, who refused to pay for advertising an election proclamation contracted for by the sheriff because the charge was excessive. There, this Court said (p. 127): "The county controller has the authority to question the reasonableness of the relator's bill and it is not only his right but his duty to refuse payment of it when the amount thereof is unreasonable and unjust." This is especially true where, as here, the auditors present a bill to the commissioners without a statement that the days for which they claim were "necessarily employed in the discharge of their duties." Nowhere and at no time, not even in their petition for the mandamus, have the auditors clearly averred that indispensable fact. For the commissioners to pay a bill which is not self-supporting would expose them to the hazard of a surcharge. They are not obliged to take the risk.

We announce no novel proposition when we hold that with respect to many of their duties county commissioners are clearly vested with wide discretion with which the courts will interfere only upon an indubitable showing that the discretion has been abused. This has been the holding of the courts from the earliest to the latest times: *Com. v. County Commissioners,* 5 Binn. 536; *Parker v. Lancaster Co.,* 1 W. & S. 460; *Com. ex rel. v. Perkins,* 7 Pa. 42; *Butz v. Fayette Co.,* 168 Pa. 464, 32 A. 28; *Bradbury v. Burschell,* 220 Pa. 439, 69 A. 1108; *Sheets v. Armstrong,* 307 Pa. 385, 161 A.

359, *Thayer v. McCaslin,* 314 Pa. 553, 171 A. 898. Whenever the law casts upon them duties which require deliberation and judgment, prudence and circumspection, vigilance and caution, or which expose them to the hazard of a surcharge, the law also vests them with discretion commensurate with the duties.

Having demonstrated that the duty which they were called upon to exercise in relation to the auditors' claims is discretionary, not ministerial, it is scarcely necessary to add that the auditors cannot secure an adjudication of their claims in a mandamus proceeding.

IV. The auditors argue that if mandamus is not available to them, they are without redress. The commissioners contended, and the court below held, that assumpsit was the proper remedy. The auditors insist that, under *Skelton v. Lower Merion Township,* 318 Pa. 356, 178 A. 387, and other cases, township and county officers are obliged to submit their accounts to auditors or controllers, that they can reach the courts only by way of an appeal from the decision of the auditing authorities, and that assumpsit will not lie for the collection of a county officer's compensation. This is indeed the general rule, but it applies only to such county officers as are obliged by law to submit their accounts to auditing officers: Cf. *House v. Allegheny Co.,* 153 Pa. Superior Ct. 396, 34 A. 2d 48. We have already stated that county auditors cannot sit as judges upon their own claims for compensation. They cannot submit their accounts to themselves, or audit their own accounts. Since they cannot adjudicate the liability of the county with respect to their own compensation, and the commissioners deny liability for the sum they claim, that question must be determined by the court. There is no statutory or decisional law denying auditors access to the courts by way of an action of assumpsit to collect their compensation.

Judgment affirmed.